CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JAN 10 2014
JULIA C. DUDLEY, CLERK
BY: /s/ J. Moore
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| FAYE BARNES, | ) | |
| | ) | Civil Action No. 3:12CV00053 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | By: Hon. Glen E. Conrad |
| GENE JOHNSON, ET AL., | ) | Chief United States District Judge |
| | ) | |
| Defendants. | ) | |

This case is presently before the court on the following motions: (1) the joint motion to dismiss the plaintiff's second amended complaint filed by defendants Johnson, Jabe, Hobbs, Ratliffe-Walker, Soukup, and Martin-Hancox; (2) plaintiff's motion to reconsider the ruling as to the dismissal of defendants Johnson, Hobbs, Ratliffe-Walker, and Soukup; (3) the motion to dismiss the plaintiff's third amended complaint filed by defendant Martin-Hancox; and (4) the joint motion for summary judgment filed by defendants MacDonald, Rosser, and Corizon. For the following reasons, the motions to dismiss will be granted, the motion to reconsider will be denied, and the motion for summary judgment will be granted in part and denied in part.

## Factual Background

Barnes filed this action pursuant to 42 U.S.C. § 1983, alleging that each defendant violated her constitutional right to be free from cruel and unusual punishment under the Eighth Amendment by exhibiting deliberate indifference to her serious medical needs. She further claims that under Virginia common law, defendants MacDonald, Rosser, and Corizon's conduct delayed her spinal surgery, and amounted to negligence or gross negligence. Finally, the plaintiff, as a third-party beneficiary to the contract between Corizon and the DOC, claims that Corizon breached its contractual duty to provide adequate and necessary health care to Fluvanna inmates. The plaintiff sues defendants MacDonald, Rosser, and Corizon (hereinafter "medical defendants"), defendants Johnson, Hobbs, Jabe, Ratliffe-

Walker, Martin-Hancox, and Soukup (hereinafter "correctional defendants"), and defendant Bland in their individual capacities. Barnes seeks damages in the amount of ten million dollars ($10,000,000.00).

The following facts, taken from the plaintiff's third amended complaint, are accepted as true for the purpose of the correctional defendants' motions to dismiss, and read in the light most favorable to the plaintiff for the purpose of the medical defendants' motion for summary judgment. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994).

Between February 2009 and January 2011, the plaintiff, Faye Barnes, was an inmate housed at Fluvanna Correctional Facility for Women ("Fluvanna") in Fluvanna County, Virginia. Pl.'s Third Amended Compl. ¶ 1. Defendant Corizon Health, Inc. ("Corizon") was under contract with the Virginia Department of Corrections to provide all medical, dental, and mental health services to the inmates at Fluvanna. Id. at ¶ 14.

On September 30, 2010, Barnes "was removed from general population and placed into the Special Housing Unit." Id. at ¶ 38. "It is standard procedure [a]t Fluvanna for an inmate in [administrative segregation] to be handcuffed behind her back[] when being transferred from her cell[] for mealtimes, showers, or other excursions." Id. at ¶ 42. "DOC policy dictates that instruments of restraint should be used as a precaution against escape, transfer for medical reasons, or as a prevention against self-injury, injury to others[,] or property damage." Id. at ¶ 43.

In preparation for moving the plaintiff to the Special Housing Unit on September 30, 2010, defendant Bland "forced [p]laintiff, who is 5'3" in height, and whose arms are quite short, to kneel on a chair and place her arms [] behind her back." Id. at ¶ 44. Bland "wrenched her arms behind her back to meet and then cuffed them together." Id. Barnes "told Bland that she felt nauseated, and like her left arm was breaking, because the cuffs were too tight, and her arms were too short, to be restrained" in that position. Id. at ¶ 45. While plaintiff was assigned to the Special Housing Unit during October 2010,

2

defendant Martin-Hancox—who supervised the segregation unit—"repeatedly, personally handcuffed her in the same, improper[,] and brutal manner," and "ordered her subordinates to carry out her order to shackle/cuff [p]laintiff in this manner." Id. at ¶¶ 174, 175. Barnes was shackled in this manner on nine separate occasions: October 1, 4, 6, 8, 11, 13, 18, 20, and 22, 2010. Id. at ¶ 175.

The plaintiff alleges that shackling her "in this fashion caused herniated discs in her neck," in addition to other "great and unnecessary pain." Id. at ¶ 177. On October 3, 2010, plaintiff requested a sick call and filed an emergency grievance complaining of "excruciating pain." Id. at ¶ 52. Nurse Robbins responded to the plaintiff's sick call, and noted the plaintiff's complaints of pain in her left arm, elbow, shoulder, neck, and head. Id. at ¶ 54. On October 6, 2010, the plaintiff submitted another sick call request due to sinus issues, and defendant Rosser, a nurse practitioner, examined Barnes. Id. at ¶¶ 57, 58. Barnes was also experiencing "unbearable left side pain" during that examination, but Rosser "refused to re-examine her left side" because it was not the stated reason for her sick call. Id. at ¶ 58. Barnes was "removed from the medical building with her wrists re-cuffed behind her back, which aggravated her pain." Id.

On November 5, 2010, Barnes filed an emergency grievance "describing her pain as a 10 on a 10/10 scale." Id. at ¶ 59. When defendant Rosser examined the plaintiff that same day, Barnes "told her how she had been handcuffed," and "described her shoulder, left arm, and elbow pain as at a level of 10." Id. at ¶ 60. Defendant Rosser prescribed medication and ordered an x-ray of the plaintiff's left shoulder and arm. Id. She did not enter any medical order providing for modified cuffing.

On November 10, 2010, the plaintiff filed an informal complaint and submitted an inmate request form to defendant MacDonald, complaining of improper care for her chronic sinusitis, reporting left arm pain, and informing prison officials that she had been left off the sick call list. Id. at ¶¶ 62, 64. Defendant MacDonald responded to the plaintiff's complaint without addressing her left arm pain. Id. at ¶ 63.

On November 15, 2010, the plaintiff submitted another sick call request. Id. at ¶ 65. Nurse Reynolds prescribed a course of treatment and medication, and referred Barnes to a physician. Id. On November 20, 2010, the plaintiff submitted another sick call request. Nurse Reynolds examined the plaintiff, and re-prescribed a course of treatment and medication for her left side pain. Id. at ¶ 67. The plaintiff filed an emergency grievance on November 22, 2010, describing her "constant," "radiating," and "pulsating" left side pain. Id. at ¶ 68. On this date, she also submitted an informal complaint to defendant MacDonald, expressing her dissatisfaction with the treatment being provided. Defendant MacDonald replied to the plaintiff's complaint:

> I have reviewed your record many times. Most recently, I made sure you had an appointment, after a family/friend called stating you did not think you would live thru (sic) Thanksgiving. You have been evaluated on many occasions, and the care is appropriate. It is unfortunate that you have ongoing pain. You do not have swollen lymph nodes. Sick Call requests are the procedure to making appointments.

Id. at ¶ 72. At defendant MacDonald's direction, Barnes submitted another sick call request.

On November 24, 2010, the plaintiff was examined by a physician, Dr. Remaly. Id. at ¶ 74. Dr. Remaly diagnosed her with cervical radiculopathy and prescribed a cervical x-ray, ordered a sling and cervical collar, and instructed that the plaintiff not be cuffed behind her back. Id. The plaintiff continued to file sick call requests and grievance forms, complaining of her left side pain. On December 7, 2010, defendant Soukup rejected one of the plaintiff's grievances because it addressed more than one issue." Id. at ¶ 80. On December 30, 2010, defendant Soukup rejected another of the plaintiff's grievances because it "contain[ed] information that occurred after the Informal Complaint submission." Id. at ¶ 89.

On January 19, 2011, Barnes was released from Fluvanna. Id. at ¶ 92. In April 2011, the plaintiff received an MRI on her left shoulder, which revealed a torn tendon, and raised concerns of compression or nerve impingement. Id. at ¶ 94. Barnes began a course of physical and occupational therapy. Id. at ¶ 95. In July 2011, the plaintiff sought treatment for her continuing neck pain, and the

plaintiff was referred for a neurological consultation. Id. at ¶ 97. In February 2012, the plaintiff consulted with Dr. Graham, a neurologist, and the neurologist diagnosed Barnes with "ongoing left upper extremity radiculopathy." Id. at ¶ 100. On March 7, 2012, Dr. Graham performed "a C6-7 anterior cervical disectomy and fusion." Id. at ¶ 101.

## Procedural History

Barnes filed the instant action on September 28, 2012, but amended her complaint on October 11, 2012, prior to serving the defendants. Defendant Bland, who was served with the amended complaint on January 10, 2013, failed to file an answer, and the Clerk entered that defendant's default on August 21, 2013. Shortly thereafter, the plaintiff sought leave of court and was granted the opportunity to file a second amended complaint. The correctional defendants filed a motion to dismiss the plaintiff's second amended complaint on October 4, 2013, to which the plaintiff responded on October 25, 2013.

On November 19, 2013, the court heard oral argument on the correctional defendants' motion to dismiss the second amended complaint for failure to state a claim. The court orally granted the plaintiff leave to amend her complaint as against defendant Martin-Hancox and indicated that the remaining correctional defendants would be dismissed unless any new allegations in the amended complaint stated viable causes of action. On December 2, 2013, the plaintiff filed her third amended complaint. On December 4, 2013, Barnes filed a motion asking this court to reconsider the earlier oral ruling as to defendants Johnson, Hobbs, Ratliffe-Walker, and Soukup, to which the defendants have responded. Defendant Martin-Hancox filed a motion to dismiss the third amended complaint for failure to state a claim, to which the plaintiff has responded.

On December 13, 2013, the medical defendants moved for summary judgment. The plaintiff filed a response, asking the court to deny the motion, to which the defendants have replied. The court heard oral argument on these pending motions on January 6, 2014. These matters are now ripe for

disposition.

## Legal Standards

### I. Motion to Dismiss

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint; it does not "resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses." See Butler v. United States, 702 F.3d 749, 752 (4th Cir. 2012) (quoting Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992)). When ruling on the defendants' motion to dismiss, this court must accept all facts alleged in the complaint as true, drawing all reasonable inferences in favor of the plaintiffs. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Erickson, 551 U.S. at 94. However, this court need not accept as true any legal conclusion disguised as a factual allegation. Iqbal, 556 U.S. at 679–81. The plaintiffs' factual allegations need not be detailed, but they must offer more than "labels and conclusions" or a "formulaic recitation of the elements of [the] cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). These facts must "be enough to raise a right to relief above the speculative level." Id.

### II. Motion for Summary Judgment

The court may grant summary judgment under Federal Rule of Civil Procedure 56 only when, viewing the record as a whole and in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the nonmoving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322–24 (1986); Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## Discussion

I. **Correctional Defendants**

Pursuant to 42 U.S.C. § 1983, the plaintiff asserts that each of the correctional defendants violated her constitutional rights under the Eighth Amendment. First, she asserts a constitutional claim against defendants Johnson, Jabe, Hobbs, and Ratliffe-Walker in their roles as supervisors. Second, she asserts a constitutional claim against defendant Soukup for her role in the grievance procedure as Institutional Ombudsman. Finally, the plaintiff asserts a constitutional claim against defendant Martin-Hancox concerning the defendant's use of the DOC's standard handcuffing procedures on Barnes.

A. **Defendants Johnson, Jabe, Hobbs, and Ratliffe-Walker**

The plaintiff complains that each of these defendants—Johnson, Jabe, Hobbs, and Ratliffe-Walker—violated her Eighth Amendment right to be free from cruel and unusual punishment. Barnes generally alleges that each of these defendants, in their supervisory capacities, displayed deliberate indifference to her serious medical needs. Specifically, she alleges that defendants Johnson and Jabe, as Director and Chief Deputy of the Virginia Department of Corrections ("DOC"), respectively, had a non-delegable responsibility to supervise prison operations, including the duty to ensure that inmates received adequate healthcare. Pl.'s Second Am. Compl. ¶¶ 111, 117. According to the plaintiff, the defendants failed to uphold this responsibility by "fail[ing] to take action to improve the conditions at Fluvanna's Medical Department to afford the inmates, including [p]laintiff, humane, timely, and appropriate medical care." Id. at ¶¶ 113, 118. Additionally, defendant Johnson allegedly "sign[ed] a contract that left DOC inmates and [p]laintiff no direct remedy against the DOC for insufficient and grossly negligent health care." Id. at ¶ 112.

The plaintiff also asserts that defendants Hobbs and Ratliffe-Walker, as Warden and Assistant Warden, respectively, were "responsible for enforcing the policies of DOC at Fluvanna, for training and supervising its guards, and for implementing and maintaining Fluvanna's customs and practices

regarding the discipline, health, and well[-]being of inmates." Id. at ¶¶ 11, 13. Barnes alleges that these defendants "knew that [p]laintiff was suffering from left sided injuries, and that she had made repeated complaints that her injuries were excruciatingly painful and severely compromised her ability to perform activities of daily living." Id. at ¶¶ 137, 144. Despite this knowledge, the defendants were "deliberately indifferent to the medical staff's abysmal failure to provide her with any meaningful diagnosis, care, and treatment." Id. at ¶¶ 138, 145.

"To state a claim of cruel and unusual punishment under the Eighth Amendment, a prisoner must allege: (1) that the deprivation of a basic human need, as an objective matter, was sufficiently serious; and (2) that, when viewed from a subjective perspective, prison officials acted with a sufficiently culpable state of mind." King v. United States, 2013 WL 3929086, at *1 (4th Cir. 2013) (citing De'lonta v. Johnson, 708 F.3d 520, 525 (4th Cir. 2013)). It is well-established that a prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). "A prison official shows deliberate indifference if he 'knows of and disregards an excessive risk to inmate health or safety.'" Odom v. S.C. Dept. of Corr., 349 F.3d 765, 770 (4th Cir. 2003) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

However, it is also well-established that prison officials are entitled to rely on the expertise of prison health care providers. Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990). To state a deliberate indifference claim under § 1983 against these defendants, the plaintiff must allege facts showing that "(1) the supervisory defendants failed promptly to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." Id. Supervisory prison officials are not charged with "ensuring that [prison medical staff] employed proper medical procedures – procedures learned during several years of medical school, internships, and residencies." Id.

8

The court concludes that the plaintiff fails to state a claim against any of these supervisory defendants. There are no factual allegations—only the plaintiff's conclusory assertions—supporting the plaintiff's claim that these defendants failed to provide the plaintiff with needed medical care, deliberately interfered with the prison doctors' performance, or tacitly authorized a constitutional violation by prison medical staff. Rather, the plaintiff's own complaint demonstrates that Barnes was regularly examined and treated by prison medical staff, prescribed various treatments, and referred to outside medical providers as needed.

Further, Barnes' conclusory allegation that defendant Johnson expressed deliberate indifference to her medical needs by signing a contract with Corizon that left her no direct remedy for insufficient and grossly negligent health care is insufficient to support a claim for relief under § 1983. Not only does the detailed grievance procedure attached to the complaint belie the plaintiff's allegation, but also the plaintiff fails to provide any facts supporting the inference that defendant Johnson knew of and disregarded an excessive risk of harm to the plaintiff upon entering that contract. Since the court concludes that the plaintiff fails to state a claim upon which relief can be granted against defendants Johnson, Jabe, Hobbs, or Ratliffe-Walker, the defendants' motion to dismiss will be granted.

B. **Defendant Soukup**

The plaintiff's § 1983 claim against defendant Soukup stems solely from the defendant's role as Institutional Ombudsman at Fluvanna. The plaintiff alleges that Soukup "worked directly with" defendants Hobbs and Ratliffe-Walker to "investigate and process inmate grievances"; and that she was "responsible for responding directly to the inmates to resolve complaints at the institutional level, to make findings appropriate with DOC's and Fluvanna's policies and procedures, and to forward appeals of rejected grievances directly to the Regional Ombudsman." Pl.'s Second Am. Compl. ¶ 14. Barnes also notes that "decisions about the necessity and severity of medical care" at Fluvanna are, "in most cases, appealed to individuals, including Institutional Ombudsmen, like [d]efendant Soukup, who lack

specialized medical training." Id. at ¶ 39.

The plaintiff alleges that "[o]n December 7, 2010, [p]laintiff received a form signed by [d]efendant Soukup, erroneously rejecting her [r]egular [g]rievance because it addressed '[m]ore than one issue.'" Id. at ¶ 86. Barnes further alleges that "[o]n December 30, 2010, [p]laintiff received a response from [d]efendant Soukup denying her lengthy grievance of December 8, 2010, for 'insufficient information.' Soukup further informed [p]laintiff that her [g]rievance form 'contains information that occurred after the [i]nformal [c]omplaint submission.'" Id. at ¶ 95.

"Inmates do not have a constitutionally protected right to a grievance procedure." Brown v. Va. Dep't of Corr., No. 6:07-CV-00033, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009) (citing Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1995)). Further, this court has specifically held that "ruling against a prisoner on an administrative complaint does not cause or contribute to a constitutional violation." Id. (internal citation and quotation marks omitted). The mere fact that Soukup denied, or otherwise rejected, the plaintiff's grievances is insufficient to state a constitutional claim under § 1983, and the defendants' motion to dismiss must be granted as to defendant Soukup. Simply stated, if the plaintiff believes that her grievances were being handled improperly, she had the opportunity to seek appropriate treatment at sick call.

C. **Defendant Martin-Hancox**

The plaintiff alleges that defendant Martin-Hancox violated her Eighth Amendment right to be free from cruel and unusual punishment by exercising deliberate indifference toward the plaintiff's serious medical needs.[1] Specifically, Barnes complains that on several occasions in October 2010, Martin-Hancox "repeatedly, personally handcuffed her" in an "improper and brutal manner"—behind her back, using only one set of handcuffs, despite the plaintiff's "quite short" arms. Pl.'s Third Am. Compl. ¶¶ 44, 174. Barnes also asserts that Martin-Hancox ordered the defendant's subordinates to

---

[1] To the extent that Barnes' claim is one of excessive force, rather than deliberate indifference, the court finds that the

10

shackle the plaintiff in the same manner. Id. at ¶¶ 47–48, 174–75. The plaintiff alleges that "this procedure was cruel in itself" because "Martin-Hancox knew there was [sic] more humane alternatives available[,] but made no attempt to employ those more humane methods." Id. at ¶ 179. As a result of being shackled behind the back, Ms. Barnes suffered "herniated discs in her neck," and other "great and unnecessary pain." Id. at ¶ 177.

"It is standard procedure [a]t Fluvanna for an inmate in [administrative segregation] to be handcuffed behind her back[] when being transferred from her cell[] for mealtimes, showers, or other excursions." Id. at ¶ 42; see also Def.'s Mot. to Dismiss Pl.'s Third Am. Compl., Exhibit 1 (Operating Procedure 420.2) ("Minimally, offenders assigned to special housing at any facility should be restrained with their hands behind their back whenever the offender is outside the cell or other secured area such as a shower.")[2] This standard procedure can be modified for offenders with medical conditions when authorized by the shift commander or higher authority. Id. ("With appropriate documentation, the shift commander or higher authority may authorize restraints in front of such an offender using a waist chain.") Nowhere in her complaint does Barnes allege that Martin-Hancox was a shift commander or higher authority with the ability to modify the restraint procedure applicable to the plaintiff. For that matter, there is no allegation that the plaintiff ever made a written request for a modified cuffing order.

Additionally, Martin-Hancox, like the other correctional defendants, was entitled to rely on the prison health care providers' expertise in determining the appropriate method for handcuffing the plaintiff. Miltier, 896 F.2d at 854. By the plaintiff's own account, Martin-Hancox "was very well aware [of], and had available to her, the numerous complaints and request[s] for medical care and sick

---

complaint fails to allege any facts tending to show that Martin-Hancox handcuffed Barnes' arms behind her back "maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010).

[2] While extrinsic evidence must generally not be considered at the Rule 12(b)(6) stage, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed." Witthohn v. Fed. Ins. Co., 164 F. App'x 395, 396 (4th Cir. 2006) (citing Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001)). In this case, the defendant submitted a copy of VDOC Operating Procedure 420.2, Use of Restraints and Management of Offender Behavior. Because Barnes specifically refers to the operating procedure in her complaint and does not dispute the exhibit's authenticity, the court may properly consider the exhibit without converting the motion to dismiss to one for summary judgment. Id.

leave requests filed and requested" by Barnes. Pl.'s Third Am. Compl. ¶ 180. Even assuming that the use of the standard cuffing procedure to restrain the plaintiff was improper, Martin-Hancox was not charged with "ensuring that [the medical staff] employed proper medical procedures" in treating Barnes. Miltier, 896 F.2d at 854. It was the plaintiff's responsibility, not Martin-Hancox's, to request a modified cuffing order from the medical staff. Indeed, nowhere in any of the plaintiff's numerous grievances does she state that the behind-the-back cuffing procedure was the source of her pain. The plaintiff alleges that she verbally requested such an order, but as a prison guard, Martin-Hancox is entitled to rely on the absence of any grievances, and the absence of any instruction from Barnes' medical providers, indicating that the standard, behind-the-back cuffing procedure should not be used to restrain the plaintiff. In the absence of such an order, Barnes cannot state facts sufficient to show that Martin-Hancox knew of and disregarded an excessive risk to inmate health or safety. Odom, 349 F.3d at 770.

Until November 24, 2010, when Dr. Remaly added a note to the plaintiff's chart— "No cuffing behind, please." —there was no indication from Barnes' health care providers that she required a modified cuffing procedure. Pl.'s Third Am. Compl. ¶ 74. Notably, the plaintiff does not allege that Martin-Hancox, or any of the defendant's subordinates, handcuffed Barnes behind the back against Dr. Remaly's instructions. Accordingly, the court finds that Barnes has failed to state a claim for relief under § 1983, and that defendant Martin-Hancox's motion to dismiss must be granted.

### D. Plaintiff's Motion to Reconsider

At the conclusion of oral argument on November 19, 2013, the court indicated that it would undertake to dismiss these five correctional defendants, based on the claims set forth in the second amended complaint. The plaintiff has moved for reconsideration of the oral ruling as to defendants Johnson, Hobbs, Ratliffe-Walker, and Soukup. Upon full consideration of the parties' briefs on the motion to reconsider and the third amended complaint, the court remains convinced that these

defendants must be dismissed. Therefore, the plaintiff's motion for reconsideration will be denied.

## II. Medical Defendants

The plaintiff asserts constitutional claims under § 1983 against each medical defendant. Barnes also raises state law claims of negligence against each defendant, and a state law claim for breach of contract against Corizon. The negligence and contract claims are brought under the court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

### A. Defendant MacDonald

The plaintiff's § 1983 claim against Dr. MacDonald primarily concerns the defendant's involvement in supervising the grievance process. "Dr. MacDonald handled the medical grievances," and "he was personally involved in [p]laintiff's grievance process." Pl.'s Resp. to Def.'s Mot. Summ. J. 17. Barnes complains that "by November, 2010, Dr. MacDonald knew that [p]laintiff was suffering from physical and possibly neurological left sided problems, and that she had made complaints of the same." Id. at ¶ 197. He knew of these medical issues "through her verbal complaints, her medical chart, and [p]laintiff's full compliance with and exhaustion of the grievance procedure." Id. at ¶ 198.

According to the plaintiff, Dr. MacDonald exhibited his deliberate indifference to her medical needs through a "classic bureaucratic blow off." Pl.'s Resp. to Def.'s Mot. Summ. J. 18. After reviewing the plaintiff's medical record, Dr. MacDonald responded to one of Barnes' grievances, saying "that the care was 'appropriate,' [and] that she had pain was 'unfortunate' and she should go to sick call." Id. "Dr. MacDonald could not [] even be bothered to go and examine [p]laintiff himself. In fact, Dr. MacDonald never examined plaintiff medically at all." Id. The plaintiff also states that Dr. MacDonald "failed to arrange a test at UVA that Dr. Remaly ordered." Id.

13

As the court noted earlier, there is no "constitutionally protected right to a grievance procedure," much less a constitutional right to have a particular doctor conduct a personal examination as part of such a grievance procedure. Brown v. Va. Dep't of Corr., No. 6:07-CV-00033, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009) (citing Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1995)). Any perceived shortcomings in Dr. MacDonald's responses to the plaintiff's numerous grievances cannot support a constitutional claim under § 1983.

Likewise, Dr. MacDonald's alleged failure to arrange a medical test at UVA, specifically an electromyogram ("EMG"), cannot support a § 1983 claim. The law is clearly established that not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 105 (1976). "[A] prisoner does not enjoy a constitutional right to the treatment of his or her choice." De'lonta v. Johnson, 708 F.3d 520, 526 (4th Cir. 2013). Rather, the treatment must be "adequate to address the prisoner's serious medical need." Id. The court notes that undisputed evidence shows that when the plaintiff ultimately received an EMG after her release, the results did not indicate "any neuropathy related to a cervical disk of any kind." Graham Dep. 12. Because the plaintiff has failed to state a cause of action under § 1983, the defendant's motion for summary judgment, as to that claim, must be granted.

Barnes also asserts that Dr. MacDonald's conduct was negligent, and she argues that a jury might even find that his conduct constituted gross negligence. In Virginia, "a plaintiff who seeks to establish actionable negligence must plead the existence of a legal duty, violation of that duty, and proximate causation which results in injury." Kellermann v. McDonough, 278 Va. 478, 487 (2009) (citations and internal quotation marks omitted). Here, Barnes argues that Dr. MacDonald breached the standard of care "by delaying and never arranging testing," such that the plaintiff was required to wait until her release from prison to undergo surgery. Pl.'s Resp. to Def.'s Mot. Summ. J. 22. This conduct, according to the plaintiff's expert, Dr. Baker, delayed the plaintiff's surgery and left her in pain. The

14

court finds the plaintiff's claim of negligence against defendant MacDonald unavailing.

The evidence shows that Dr. MacDonald only interacted with the plaintiff by responding to her grievances. Dr. Remaly, not defendant MacDonald, was Barnes' treating physician. In response to the plaintiff's complaints, MacDonald reviewed Barnes' medical record and determined that she was receiving adequate care from her treating physician, Dr. Remaly. The court notes that the plaintiff's expert, Dr. Baker, agreed that the care provided by Dr. Remaly was adequate. Baker Dep. 9. On these facts, no reasonable jury could conclude that Dr. MacDonald's conduct was negligent.

Since the court finds that no genuine issue of material fact remains in dispute such that Barnes could prove that Dr. MacDonald's conduct violated the plaintiff's constitutional rights, or constituted negligence, the defendants' motion for summary judgment with regard to Dr. MacDonald will be granted.

**B.     Defendant Rosser**

Unlike Dr. MacDonald, Nurse Practitioner Rosser, who monitored the medical treatment of inmates housed in Building 8, personally examined the plaintiff on multiple occasions. Pl.'s Third Am. Compl. ¶¶ 58, 60; Rosser Dep. ¶ 4. As a nurse practitioner, Rosser "had the power to recommend or deny doctor's appointments, medication, tests, surgery, physical therapy, and all other medical treatments." Id. at ¶ 16. Barnes complains that "from at least October 6, 2010, [] Rosser had knowledge of the great pain [p]laintiff suffered and did nothing constructive to see [that p]laintiff's condition was diagnosed or treated." Pl.'s Resp. to Def.'s Mot. Summ. J. 18.

On October 6, 2010, Barnes "tried to discuss her arm pain with Rosser, but was denied that opportunity." Id. "Despite Ms. Rosser's knowledge of [p]laintiff's urgent medical issues by and through her verbal complaints, her medical chart, and [p]laintiff's full compliance with and exhaustion of the grievance procedure," the plaintiff alleges that defendant Rosser was deliberately indifferent to Barnes' serious medical needs. Pl.'s Third Am. Compl. ¶ 205. In support of the plaintiff's claim,

15

Barnes offers evidence showing that Rosser "gave [p]laintiff Motrin in spite of the fact that it was counter indicated due to [Barnes'] renal problems," "had the ability to change the painful cuffing, but never made such an order," and "failed to see that [Barnes] got prescribed medication." Pl.'s Resp. to Def.'s Mot. Summ. J. 18–19.

The plaintiff also offers evidence that on November 5, 2010, Barnes informed Rosser that "she had been handcuffed in the back while in segregation at leas[t] 3–4 times a week and that the arm pain was from the back of body handcuffing." Pl.'s Resp. to Def.'s Mot. Summ. J., Exhibit 11 (Rosser Statement), p. 3.

Defendant Rosser argues that "the first time she had knowledge of plaintiff's complaint of pain in her left arm and neck was on November 3, 2010, after plaintiff submitted an emergency grievance while being housed in the segregation unit in Building 8." Def.'s Mot. Summ. J. 22. Rosser further argues that once the defendant learned of the plaintiff's condition, she "ordered treatment that included an x-ray, a course of prednisone, and other ancillary aides to treat her pain and discomfort." Def.'s Reply to Pl.'s Resp. to Def.'s Mot. Summ. J. 3. The defendant contends that she did not behave with deliberate indifference when she prescribed Motrin to the plaintiff, despite the fact that Barnes suffered from kidney disease, nor when she prescribed blood pressure medication for the plaintiff, but did not follow up to ensure that the plaintiff was receiving that medication.

After considering the evidence now before the court, the court believes that Barnes presents genuine issues of fact as to the subjective component of her Eighth Amendment claim against Rosser. A factual dispute also exists as to whether the plaintiff informed Rosser of cuffing problems in October of 2010. Considering the evidence in the light most favorable to the plaintiff, a reasonable jury could find that Rosser knew of and disregarded the plaintiff's serious medical needs, at a time well before November 3, 2010, by failing to issue a modified cuffing order.

As to the simple negligence claim against Rosser, the court believes that there are factual

disputes as to whether Rosser breached the applicable standard of care in her treatment of the plaintiff. The court agrees with the defendant that the plaintiff's expert, Ms. Grossman, is a registered nurse who lacks the qualifications required to testify as to the standard of care applicable to a nurse practitioner. However, to the extent that Dr. Baker trains nurse practitioners in his capacity as a member of the clinical faculty at the University of Maryland School of Nursing, he is qualified to testify as to the relevant standard of care. Baker Dep. 3–4. Dr. Baker's evidence indicates that Nurse Rosser breached the applicable standard of care.

Ultimately, the defendant may succeed in proving her factual assertions at trial. Barnes' evidence, however, taken in the light most favorable to the plaintiff, permits a reasonable inference that Rosser violated the plaintiff's constitutional rights and, at a minimum, breached the required standard of care. Therefore, the defendants' motion for summary judgment in favor of defendant Rosser must be denied.

### C. Defendant Corizon

First, the plaintiff asserts a claim under § 1983 against defendant Corizon. The law is well-established in this circuit that a private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of respondeat superior. See Austin v. Paramount Parks, Inc., 195 F.3d 715, 728 (4th Cir. 1999). "Rather, a private corporation is liable under § 1983 *only* when an official policy or custom of the corporation causes the alleged deprivation of federal rights." Id. (emphasis in original).

Here, Barnes primarily alleges that Corizon violated her Eighth Amendment rights through its agents and employees' deliberate indifference to her medical needs. Pl.'s Third Am. Compl. ¶¶ 190–92. In support, she argues that Corizon employees, including Dr. MacDonald and Rosser, "failed to send her for necessary testing and consultation, ignored her frequent requests, reports, and complaints, and gave her medicine she was not supposed to have." Pl.'s Resp. to Def.'s Mot. Summ. J. 20–21. Under

17

well-established precedent, Corizon cannot be held liable under § 1983 for these alleged actions by its individual employees.

The plaintiff also alleges that Corizon maintained a "widespread policy, custom, pattern, and practice to deny medical treatment or to be deliberately indifferent" to her medical needs. Pl.'s Third Am. Compl. ¶. 42. Barnes identifies a cost-control provision in the contract between Corizon and the DOC and characterizes it as "a built in bias in favor of minimizing the treatment of inmates outside the prison." Pl.'s Resp. to Def.'s Mot. Summ. J. 2–3. She specifically asserts that this financial incentive caused her to be denied necessary treatment. Id. at 3. However, the plaintiff's factual allegations do not support the notion that there was some pervasive policy or practice in place by which Corizon routinely denied inmates referrals to outside providers. In fact, the plaintiff's own complaint belies this assertion. See Pl.'s Third Am. Compl. ¶ 50 ("On October 3, 2010, Plaintiff was transported to the Ear, Nose, and Throat Department at University of Virginia Hospital 'UVA' to be seen for sinus pain."); id. at ¶ 87 ("On or about December 22, 2010, Plaintiff was sent to UVA for her scheduled MRI."). Upon this record, the court finds that Barnes has failed to adduce any facts from which a reasonable jury could conclude that an official policy or custom of Corizon caused the alleged deprivation of her federal rights. Therefore, Corizon is entitled to judgment as a matter of law on Barnes' § 1983 claim.

Second, Barnes alleges that Corizon, by and through its employees, was negligent for "failing to provid[e] adequate, necessary, and humane medical care." Pl.'s Third Am. Compl. ¶ 217. Under Virginia law, an employer can be held liable for the negligent acts of its employees under the doctrine of respondeat superior. McDonald v. Hampton Training School for Nurses, 254 Va. 79, 81 (1997). To the extent that a factual dispute exists as to Nurse Rosser's negligence, a factual dispute also exists as to the negligence of Corizon. Therefore, the medical defendants' motion for summary judgment as to the negligence claim against Corizon must be denied.

Finally, Barnes asserts a breach of contract claim against Corizon. Specifically, the plaintiff

18

argues that Corizon breached its contractual obligation to provide adequate and necessary health care. To the extent that a factual dispute exists as to whether Corizon and its employees were negligent, a factual dispute also exists as to whether Corizon breached its contract with the DOC. Therefore, the court finds that the medical defendants' motion for summary judgment must be denied as to the breach of contract claim against Corizon.

## Conclusion

For the reasons stated, the correctional defendants' motions to dismiss will be granted, the plaintiff's motion for reconsideration will be denied, and the medical defendants' motion for summary judgment will be granted in part and denied in part. The case will proceed to trial on the constitutional claim against defendant Rosser, and on the state law claims against defendants Rosser and Corizon. All other claims and defendants will be dismissed from this action.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 10th day of January, 2014.

/s/ Glen Conrad
Chief United States District Judge